IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

JENNIFER LARKIN,

                          Plaintiff

v.

A-B PETROLEUM INC,
BRIAN HALDORSON,
JANET CUNNINGHAM,
GREG WAKEMAN, and
BARBARA DICKSON

                          Defendants

_____

**COMPLAINT
AND JURY DEMAND**
_____

Plaintiff, Jennifer Larkin, by and through her attorney, Kristina M. Bergsten, hereby files this

Complaint and Jury Demand against the above named Defendants.

**I. INTRODUCTION**

1.     Plaintiff brings this Tort Action against Defendant A-B Petroleum Inc. (hereafter, "A-B

        Petroleum" or "Petroleum"), Defendant Brian Haldorson, Defendant Janet Cunningham,

        Defendant Greg Wakeman, and Defendant Barbara Dickson for relief through injunctive

        relief, compensatory damages, punitive damages, and attorney fees stemming from

        Defendants' violations of Plaintiff's rights guaranteed by the Colorado Anti-

        Discrimination Act ("CADA"), Colo. Rev. Stat. §§ 24-34-601, 24-34-306(2)(b)(I)(B),

        24-34-301(5)(a) and (5.3), 24-34-505.6, 24-34-801, *et. seq.*, and the Americans with

Disabilities Act of 1990 ("ADA") 42 U.S.C. §§ 12181-12189, and the relevant regulation implementing title III, 28 C.F.R. pt. 36.

2.   Plaintiff brings this Civil Rights Action against Defendants for relief through damages and attorneys' fees available under and stemming from Defendants' violations of Plaintiff's rights to be free from discrimination causing intentional infliction of emotional distress.

3.   Defendants' conduct, jointly and severally, directly and proximately caused the deprivation of Plaintiff's protected rights; Plaintiff seeks relief through injunctive relief, compensatory damages, punitive damages, and attorney fees.

## II. JURISDICTION

4.   Jurisdiction over the federal claims is conferred on the Court pursuant to 28 U.S.C. §§ 1331 and 1343, and may exercise jurisdiction over the state claims pursuant to its authority under 28 U.S.C. § 1367(a).

5.   Jurisdiction for attorney fees and costs is found at 28 C.F.R. 35.176, 42 U.S.C. § 12133, 29 U.S.C. § 794a(b), and Colo. Rev. Stat. §§ 24-34-802(3), 804(3)(b).

6.   Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391.

## III. PARTIES

7.   At all times material hereto, Plaintiff Jennifer Larkin is an adult individual and a resident of Jefferson County, Colorado.

8.   At all times material hereto, Defendant A-B Petroleum Inc. is a corporation pursuant to Colo. Rev. Stat. § 24-34-601(1), with its principal place of business located at 1245 West Alameda Ave., Denver, Colorado 80223.

9.      At all times material hereto, Defendant Brian Haldorson, is an adult individual and a resident of Colorado. At all times material hereto, Defendant Haldorson is the President of Defendant A-B Petroleum.

10.     At all times material hereto, Defendant Janet Cunningham is an adult individual and a resident of Colorado. At all times material hereto, Defendant Cunningham is the Store Manager of Defendant A-B Petroleum.

11.     At all times material hereto, Defendant Greg Wakeman is an adult individual and a resident of Colorado. At all times material hereto, Defendant Wakeman is the District Manager of Defendant A-B Petroleum.

12.     At all times material hereto, Defendant Barbara Dickson is an adult individual and a resident of Colorado. At all times material hereto, Defendant Dickson is the Cashier of Defendant Petroleum.

### IV. GENERAL ALLEGATIONS

15.     Plaintiff Larkin hereby realleges and incorporates by reference as though fully set forth herein the allegations contained above.

16.     Plaintiff, Jennifer Larkin, is an individual with disabilities. Colo. Rev. Stat. § 24-34-301(2.5) ("'Disability' has the same meaning as set forth in the federal 'Americans with Disabilities Act of 1990' . . . and its related amendments and implementing regulations.").

17.     Plaintiff Larkin is a qualified individual with a disability for purposes of using the accommodation services provided by Defendants Petroleum and Jefferson Crisis Center. 42 U.S.C. § 12102; 49 C.F.R. § 37.3 (definition of "disability;" 49 C.F.R. § 27.5 (same); Colo. Rev. Stat. § 24-34-301(5.6) ("'Qualified individual with a disability' . . . has the

same meaning as set forth in the federal 'Americans with Disabilities Act of 1990' . . . and its related amendments and implementing regulations.").

18.   Plaintiff Larkin uses a service animal as defined under 49 C.F.R. 37.3 (nonexclusive definition of "service animal"), a dog named, "Echo."

19.   Echo is housebroken.

20.   Plaintiff Larkin's business partner, a healing minister and dog trainer, helped Plaintiff Larkin train Echo in all the initial basic service dog skills. Echo has a certificate from this healing center reflecting her training.

21.   Echo was trained by Plaintiff Larkin and her business partner and was obedient to Plaintiff Larkin.

22.   At all times material hereto, Echo was under Plaintiff Larkin's control and command.

23.   Echo has been individually trained to perform tasks for the benefit of Plaintiff Larkin and to respond to and alleviate the symptoms of her disability.

24.   On August 12, 2019, Plaintiff Larkin, with her service animal, Echo, was denied full and equal enjoyment of a place of public accommodation by being rejected service from, scared out of, and issued a Trespass Notice to never return for one (1) year to the A-B Petroleum gas station based on her disability and use of a service dog.

25.   Plaintiff Larkin, with her service animal, entered the A-B Petroleum gas station to purchase a bag of sunflower seeds.

26.   Upon entering the A-B Petroluem gas station, Plaintiff Larkin saw Defendant Cunningham changing a garbage bag at the front of the store. Defendant Cunningham looked up at Plaintiff Larkin, smiled, and then visibly changed her demeanor upon seeing Plaintiff Larkin's dog.

27.   Less than ten (10) seconds later, Defendant Cunningham shouted at Plaintiff Larkin, "Is that a dog?" Plaintiff Larkin responded, "Yes, she is a service dog."

28.   Defendant Cunningham then proceeded to accuse the dog of "not working" or "not performing a duty" and instructed Plaintiff Larkin to "leave the store immediately."

29.   Plaintiff Larkin assured Defendant Cunningham that she had rights and she was allowed to be in the store with her dog.

30.   Defendant Cunningham argued, "we sell food and drink in here – this is no place for a dog – you are not allowed to be in here."

31.   This assertion is contrary to the ADA, which requires service animals to be allowed to accompany their handlers anywhere the public is allowed to go, including establishments that serve food. 42 U.S.C. §§ 12181(7)(B) and (E).

32.   After Plaintiff Larkin again asserted her rights, Defendant Cunningham asked for the dog's paperwork proving that she was in fact a service dog.

33.   Plaintiff Larkin responded that it was not a legal requirement for her to carry such documentation.

34.   Defendant Cunningham then forcibly lunged at Plaintiff Larkin in a quick and aggressive manner which instinctually caused Plaintiff Larkin to step backwards, panic, and seek space from Defendant Cunningham by walking around to put a shelving unit in between them.

35.   Due to Plaintiff Larkin's disabilities, she has personal space restrictions and when those restrictions are violated, that violation can trigger panic attacks.

36.  Plaintiff Larkin politely asked Defendant Cunningham to stay back and give her space. In an antagonistic tone, Defendant Cunningham said, "you have space – see!" gesturing to the shelving unit in between them.

37.  Defendant Cunningham again demanded that Plaintiff Larkin leave.

38.  Plaintiff Larkin assured her that she just wanted to buy a bag of sunflower seeds and she was being quiet, orderly, and not causing a disturbance of any kind. Defendant responded by demanding Plaintiff Larkin leave immediately.

39.  Plaintiff Larkin politely requested to speak to the manager. Defendant Cunningham told her to leave again.

40.  At this point, Plaintiff Larkin started to have a panic attack and scrambled to defend herself stating, "This is not right. You have no right to demand that I leave. I have a right to use your store as a disabled person."

41.  After some more exchanged words, Defendant Cunningham asked another employee for the phone and said, "I am calling the police."

42.  In an effort to seek support, Plaintiff Larkin knocked on a door she thought would be the manager's office. Defendant Wakeman answered the door.

43.  Plaintiff Larkin asked Defendant Wakeman for the number of the A-B Petroleum head office so she can file an official complaint. Defendant Wakeman scoffed and said, "And, who are you?"

44.  Plaintiff Larkin explained the situation.

45.  Defendant Wakeman asked her for her paperwork proving her dog to be a service animal. Plaintiff Larkin explained that she did not have the paperwork on her and before she could explain she was not legally required to show him paperwork, anyway, Defendant

Wakeman rolled his eyes, disgustedly sighed, asked Defendant Cunningham if she was calling the police, slapped his hand in the air toward Plaintiff Larkin as if to blow her off, turned away back into his office, and closed the door in her face never to be seen again.

46. At this time, Defendant Cunningham was on the phone with police dispatch, making outrageous and false accusations that Plaintiff Larkin was a crazy, aggressive, dangerous, and violent person. Plaintiff Larkin could hear everything Defendant Cunningham was saying and could tell Defendant Cunningham knew she could hear her based on their proximity and the loud volume of her voice.

47. While overhearing the phone conversation with the police, Defendant Dickson stepped away from the cashier and walked over to stand opposite Plaintiff Larkin.

48. Defendant Dickson glared at Plaintiff Larkin and began to taunt her by suggesting she was being out of line and behaving inappropriately, she should be ashamed of herself, and she has real problems and should leave.

49. As calmly as possible, Plaintiff Larkin again stated that her rights as a disabled person were being severely violated and that it was the store's and the staff's handling of this situation that should be ashamed.

50. Plaintiff Larkin noticed that Defendant Cunningham had walked outside in front of the store to continue to talk to the police over the phone.

51. When Plaintiff Larkin walked outside to overhear the conversation, she heard Defendant Cunningham say, "Yes, emotional support dog" into the phone.

52. Plaintiff Larkin interjected that her dog was a Service Dog and not an Emotional Support Dog. Defendant Cunningham just looked at Plaintiff Larkin, rolled her eyes, and rudely stated, "mhm, yeah right, I will believe that when I see that."

53. When Defendant Cunningham ended her phone call with the police, Plaintiff Larkin said, "You know, not all disabilities are obvious – many of them are invisible. Regardless, we all deserve equal rights."

54. Defendant Cunningham taunted, "Yeah, well I have a disability as well." Plaintiff Larkin asked, "and this is the degree of compassion you are capable of?"

55. During this confrontation, Echo began making low howling talking noises alerting Plaintiff Larkin that she was dangerously close to having an episode.

56. Witnessing this, Defendant Cunningham scoffed, looked down Echo, sarcastically smiled, and stated, "No, your dog is probably barking because you are screaming and yelling and you are upsetting her."

57. Beside herself, Plaintiff Larkin began shaking violently. Defendant Cunningham just looked her up and down, turned, and walked back inside the store.

58. Plaintiff Larkin collapsed onto to her knees onto the pavement trying to stop hyperventilation from coming on. Echo approached Plaintiff Larkin to initiate a "Tactile Stress Response Interaction" Echo has been trained to do to calm Plaintiff Larkin down. Plaintiff Larkin started to sob uncontrollably.

59. Witnessing this, nobody from the store checked on Plaintiff Larkin's well-being. Nobody from the store asked her if she required medical attention.

60. Plaintiff Larkin had been abandoned there completely on public display sobbing and shaking as she waited for the police to arrive.

61. Two (2) police officers finally arrived. One (1) of the officers showed compassion for Plaintiff Larkin while the other officer, influenced by A-B Petroleum's employees' false

stories, accused Plaintiff Larkin of becoming violent and inquired if she had physically hit anyone.

62.   Plaintiff Larkin denied any physical assault because none had occurred.

63.   Outside of this accusation and inquiry, the second officer did not say another word to Plaintiff Larkin, did not interact with her further, and did not request to hear her version of the events.

64.   Thus, without proper impartial investigation, the second officer ultimately decided that Plaintiff Larkin was at fault and issued her a Trespass Notice, effectively disallowing Plaintiff Larkin from entering onto the A-B Petroleum property for one (1) full year.

65.   In response, Plaintiff Larkin yelled out, "No, no, no, no, no. This is not ok."

66.   In signing the Trespass Notice, Plaintiff Larkin was unable to control her violently shaking hand and kept stating, "No, no, no I can't do it, my hand's not working. No, no, no." She further stated, "This is not even me. This is not my writing. I can't do it."

67.   After handing Plaintiff Larkin her copy of the Trespass Notice, the second officer retired to her patrol car.

68.   The first officer stayed behind and expressed concern for Plaintiff Larkin's inability to drive in her condition.

69.   Eventually, the first officer suggested to Plaintiff Larkin that she drive her to the Jefferson Center for Mental Health. Plaintiff Larkin agreed and was dropped off there.

70.   Following this incident, Plaintiff Larkin filed a "Complaint of Discrimination" with the Colorado Civil Rights Division on October 14, 2019.

71.   Defendant Haldorson, President of Petroleum, filed a response to Plaintiff Larkin's Complaint by providing evidence of Petroleum's support for Canine Companions for

Independence, the largest non-profit provider of highly trained assistance dogs for people with disabilities.

72. This evidence was supposedly meant to show Petroleum's respect for people with disabilities and their service animals.

73. In his response, Defendant Haldorson stated, "A-B Petroleum is not aware of any individuals from a protected class that have been denied goods, services, benefits or privileges in the past."

74. The incident that occurred on August 12, 2019 at the A-B Petroleum was a violation of Plaintiff Larkin's rights as a qualified disabled person in the company of a service animal.

75. Thus, Defendant Haldorson ignored the actions of his employees on that day and allowed his employees to deny Plaintiff Larkin the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations provided by Defendant Petroleum.

76. This discrimination, harassment, and interference with Plaintiff Larkin's rights and privileges caused Plaintiff Larkin humiliation, and mental and emotional distress.

77. As a direct and proximate result of the wrongful conduct of each of the Defendants, Plaintiff Larkin has been substantially injured. These injuries include, but are not limited to, humiliation, and mental and emotional distress caused by the conduct of all Defendants.

78. Plaintiff Larkin is deeply disturbed by the willfully wanton and reckless conduct of Defendants that directly caused violations of her Federal and State Rights.

79.    Plaintiff Larkin is entitled to punitive damages on her tort claims against Defendants to redress their willful, wanton, and reckless conduct.

80.    Plaintiff Larkin requests injunctive relief sought to prevent future harm to herself and others similarly situated from the discriminatory conduct of Defendants.

81.    Plaintiff Larkin will be irreparably harmed if the injunction and the judgment sought herein are not entered for Plaintiff Larkin and against Defendants.

### V. FIRST CLAIM FOR RELIEF
### Violations of the Americans with Disabilities Act
(Against all Defendants)

82.    Plaintiff Larkin hereby realleges and incorporates by reference as though fully set forth herein the allegations contained above.

83.    Title III of the ADA prohibits discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation. 42 U.S.C. § 12182(a); 28 C.F.R. 36.201(a).

84.    Defendant A-B Petroleum is a place of "public accommodation" under 42 U.S.C. § 12121(7)(A); 28 C.F.R. 36.104(1)(i).

85.    Defendants violated the ADA by failing to "modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability." 28 C.F.R. § 36.302(a).

86.    Defendants violated the ADA by denying Plaintiff Larkin the benefits of its and their services, programs, and activities, as more fully set forth above.

87.   Defendants Petroleum, Cunningham, Wakeman, and Dickson discriminated against Plaintiff Larkin for her use of a service animal when they denied her service at Defendant A-B Petroleum.

88.   Defendants Petroleum, Cunningham, Wakeman, and Dickson discriminated against Plaintiff Larkin for her use of a service animal when they illegally demanded "paperwork" to verify that Echo was a service dog.

89.   Defendants Petroleum, Cunningham, Wakeman, and Dickson discriminated against Plaintiff Larkin for her use of a service animal when they taunted her that her dog was only an "emotional support animal," thus denying the reality of her "invisible disabilities" that are protected under the ADA, and claimed that her dog was "barking" because she was "yelling and screaming" and not because Echo was responding to a symptom of Plaintiff's disabilities.

90.   Defendant Cunningham unlawfully denied Plaintiff Larkin the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations provided by Defendant Petroleum by shouting at Plaintiff Larkin to "leave the store immediately" at least five (5) times, even after being advised of her rights under the ADA by Plaintiff Larkin.

91.   Defendant Cunningham unlawfully denied Plaintiff Larkin the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations provided by Defendant Petroleum by shouting at Plaintiff Larkin to "provide paperwork proving [Plaintiff Larkin's] dog is a service dog," even after being advised providing paperwork is not a legal requirement by Plaintiff Larkin.

92.    Not only is providing proof of an animal's service not a legal requirement, it is actually an impermissible inquiry under the ADA. 28 C.F.R § 25.136(f).

93.    Defendant Cunningham unlawfully denied Plaintiff Larkin the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations provided by Defendant Petroleum by quickly and aggressively approaching Plaintiff Larkin with an intent to scare Plaintiff Larkin and thus effectively triggering Plaintiff Larkin into a panic attack, a symptom of her disabilities.

94.    Defendant Cunningham unlawfully denied Plaintiff Larkin the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations provided by Defendant Petroleum by calling the police on Plaintiff Larkin for "trespassing."

95.    Defendant Cunningham unlawfully denied Plaintiff Larkin the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations provided by Defendant Petroleum by falsely telling the police that Plaintiff Larkin's dog was an emotional support dog, not a service dog.

96.    Defendant Cunningham unlawfully denied Plaintiff Larkin the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations provided by Defendant Petroleum by falsely telling the police that Plaintiff Larkin was acting aggressive and violent.

97.    Defendant Wakeman unlawfully denied Plaintiff Larkin the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations provided by Defendant Petroleum by asking Plaintiff Larkin to "provide paperwork proving [Larkin's] dog is a service dog." 28 C.F.R § 25.136(f).

98.  Defendant Wakeman unlawfully denied Plaintiff Larkin the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations provided by Defendant Petroleum by rolling his eyes and disgustedly sighing at Plaintiff Larkin.

99.  Defendant Wakeman unlawfully denied Plaintiff Larkin the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations provided by Defendant Petroleum by telling Defendant Cunningham to call the police on Plaintiff Larkin.

100. Defendant Dickson unlawfully denied Plaintiff Larkin the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations provided by Defendant Petroleum by staring Plaintiff Larkin down in an antagonizing fashion.

101. Defendant Dickson unlawfully denied Plaintiff Larkin the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations provided by Defendant Petroleum by taunting Plaintiff Larkin and telling her, "you are out of order," "you are behaving inappropriately," "you should be ashamed of yourself," and " you have real problems and should leave."

102. Defendant Haldorson unlawfully denied Plaintiff Larkin the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations provided by Defendant Petroleum by ignoring the actions of his employees on that day, by permitting his employees to deny Plaintiff Larkin the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations provided by Defendant Petroleum, and finally refusing to investigate the actions of his employees on that day and disciplining his employees.

103.   Each Defendant discriminated against Plaintiff Larkin on the basis of disability by failing to follow Federal laws and regulations protecting persons with disabilities and allowing them to have equal access to a place of public accommodation.

104.   The acts or omissions of Defendants were moving forces behind Plaintiff Larkin's injuries.

105.   Defendants acted intentionally and with a deliberate indifference to Plaintiff Larkin's Federal and State rights.

106.   The acts or omissions of Defendants as described herein intentionally deprived Plaintiff Larkin of her rights pursuant to the Federal laws and regulations described herein and caused her other damages.

107.   Based on the aforementioned description of conduct, it is Defendants' custom, policy, decision, widespread habit, usage, or practice to deny disabled persons with service dogs customer service.

108.   As a proximate result of Defendants' unlawful conduct, Plaintiff Larkin suffered actual mental and emotional injuries, and other damages and losses as described herein entitling her to compensatory damages, in amounts to be determined at trial.

109.   Plaintiff Larkin and other individuals with disabilities who use service animals will continue to use Defendants' services and experience the same discriminatory conduct by Defendants and continue to suffer damages as a result.

110.   Plaintiff Larkin requests injunctive relief sought to prevent future harm to herself and others similarly situated from the discriminatory conduct of Defendants.

111.   Plaintiff Larkin will be irreparably harmed if the injunction and the judgment sought herein are not entered for Plaintiff Larkin and against Defendants.

## VI. SECOND CLAIM FOR RELIEF
### Violations of the Colorado Anti-Discrimination Act
(Against All Defendants)

112.   Plaintiff Larkin hereby realleges and incorporates by reference as though fully set forth herein the allegations contained above.

113.   Under the Colorado Anti-Discrimination Act ("CADA"), people with disabilities must be "enable[d] . . . to participate fully in social . . . as well as other activities in our state on the same terms and conditions as individuals without a disability[.]" Colo. Rev. Stat. § 24-34-801(1)(a).

114.   In addition, "individuals . . . with a disability have the same rights as individuals without a disability to the full and free use of the streets, highways, sidewalks, walkways, public buildings, public facilities, and other public places[.]" *Id*. § (1)(b).

115.   In addition, "individuals . . . with a disability must not be excluded, by reason of his or her disability, from participation in or be denied the benefits of the services, programs, or activities of any public entity or be subject to discrimination by any public entity." *Id*. § (1)(d).

116.   It is discriminatory practice and unlawful for a person, directly or indirectly, to refuse, withhold from, or deny to an individual or a group, because of a disability . . . the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation . . . or that an individual's patronage or presence at a place of public accommodation is unwelcome, objectionable, unacceptable, or undesirable because of disability." Colo. Rev. Stat. § 24-34-601(2)(a).

117.   Part 6 of Title 24, Article 34 of the CADA applies to "any place of business engaged in any sales to the public in any place offering services, facilities, privileges, advantages, or

accommodations to the public, including but not limited to . . . any public transportation facility . . . or public facility of any kind . . . ." Colo. Rev. Stat. § 24-34-601(1).

118.    Under the CADA, "'Person' means one or more individuals, limited liability companies, partnerships, associations, corporations, legal representatives, trustees, receivers, or the state of Colorado and all of its political subdivisions and agencies." Colo. Rev. Stat. § 24-34-301(5)(a).

119.    Each Defendant is a person within the meaning of the CADA.

120.    "It is discriminatory practice and unlawful for a person, directly or indirectly, to refuse, withhold from, or deny to an individual or a group, because of disability . . . the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation." Colo. Rev. Stat. § 24-34-601(2)(a).

121.    Plaintiff Larkin is an individual with a disability under the CADA. Colo. Rev. Stat. §§ 24-34-802(1), 24-34-301(2.5) ("Disability" has the same meaning as set forth in the federal 'Americans with Disabilities Act of 1990' . . . and its related amendments and implementing regulations.").

122.    "A court that hears civil suits pursuant to this section shall apply the same standards and defenses that are available under the federal 'Americans with Disabilities Act of 1990', 42 U.S.C. sec. 12101 *et seq*., and its related amendments and implementing regulations." Colo. Rev. Stat. § 24-34-802(4).

123.    "A claim brought pursuant to paragraph (a) of this subsection (2) [of Colo. Rev. Stat. § 24-34-601(1)] that is based on disability is covered by the provisions of section 24-34-802." Colo. Rev. Stat. § 24-34-601(2)(b).

124.    Under the ADA, "Nothing in this chapter shall be construed to invalidate or limit the remedies, rights, and procedures of any Federal law or law of any State or political subdivision of any State or jurisdiction that provides greater or equal protection for the rights of individuals with disabilities than are afforded by this chapter." 42 U.S.C. § 12201(b).

125.    To the extent that the CADA provides greater protections for the rights of individuals with disabilities than are provided under the ADA, the CADA protections prevail.

126.    The CADA provides specific statutory protections for individuals with disabilities. Colo. Rev. Stat. § 24-34-801, 802, 803, and 804.

127.    The CADA also provides specific statutory protections pertaining to the "Rights of individuals with service animals." Colo. Rev. Stat. § 24-34-803, 804.

128.    "Qualified individual with a disability" or "individual with a disability" has the same meaning as set forth in the federal "Americans with Disabilities Act of 1990", 42 U.S.C. sec. 12131, and its related amendments and implementing regulations. Colo. Rev. Stat. § 24-34-301(5.6).

129.    Plaintiff Larkin is a qualified individual with a disability for purposes of using Petroleum's and Jefferson Crisis Center's public services.

130.    "'Public entity' has the same meaning as set forth in Title II of the federal 'Americans with Disabilities Act of 1990', 42 U.S.C. § 12131, and its related amendments and implementing regulations." Colo. Rev. Stat. § 24-34-301(5.4).

131.    "'Service animal' has the same meaning as set forth in implementing regulations of Title II and Title III of the federal 'Americans with Disabilities Act of 1990', 42 U.S.C. sec. 12101 *et seq*." Colo. Rev. Stat. § 24-34-301(6.5).

132.  Echo is a service animal under the CADA.

133.  "It is unlawful for any person, corporation, or agent of any person, firm or corporation to

      withhold, deny, deprive, or attempt to withhold, deny, or deprive a qualified individual

      with a disability who is accompanied by a service animal any of the rights and privileges

      secured by section 24-34-803;" or to "[t]hreaten or interfere with any of the rights of a

      qualified individual with a disability who is accompanied by a service animal . . . secured

      in section 24-34-803;" or to "[p]unish or attempt to punish a qualified individual with a

      disability who is accompanied by a service animal for exercising or attempting to

      exercise any right or privilege secured by section 24-34-803" . . . or to "interfere with . . .

      a service animal." Colo. Rev. Stat. § 24-34-804(1).

134.  Any person who violates Colo. Rev. Stat. § 24-34-804(1) is liable to the qualified

      individual with a disability who is accompanied by a service animal. Colo. Rev. Stat. §§

      24-34-804(3) and 802(2)(a), including but not limited to a court order requiring

      compliance and monetary damages.

135.  Defendants Petroleum, Cunningham, Wakeman, and Dickson discriminated against

      Plaintiff Larkin for her use of a service animal when they denied her service at Defendant

      A-B Petroleum.

136.  Defendants Petroleum, Cunningham, Wakeman, and Dickson discriminated against

      Plaintiff Larkin for her use of a service animal when they illegally demanded

      "paperwork" to verify that Echo was a service dog.

137.  Defendants Petroleum, Cunningham, Wakeman, and Dickson discriminated against

      Plaintiff Larkin for her use of a service animal when they taunted her that her dog was

      only an "emotional support animal," thus denying the reality of her "invisible

disabilities" that are protected under the CADA, and claimed that her dog was "barking" because she was "yelling and screaming" and not because Echo was responding to a symptom of Plaintiff's disabilities.

138. Defendant Cunningham unlawfully denied Plaintiff Larkin the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations provided by Defendant Petroleum by shouting at Plaintiff Larkin to "leave the store immediately" at least five (5) times, even after being advised of her rights under the ADA by Plaintiff Larkin.

139. Defendant Cunningham unlawfully denied Plaintiff Larkin the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations provided by Defendant Petroleum by shouting at Plaintiff Larkin to "provide paperwork proving [Plaintiff Larkin's] dog is a service dog," even after being advised providing paperwork is not a legal requirement by Plaintiff Larkin.

140. Defendant Cunningham unlawfully denied Plaintiff Larkin the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations provided by Defendant Petroleum by quickly and aggressively approaching Plaintiff Larkin with an intent to scare Plaintiff Larkin and thus effectively triggering Plaintiff Larkin into a panic attack, a symptom of her disabilities.

141. Defendant Cunningham unlawfully denied Plaintiff Larkin the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations provided by Defendant Petroleum by calling the police on Plaintiff Larkin for "trespassing."

142. Defendant Cunningham unlawfully denied Plaintiff Larkin the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations provided by

Defendant Petroleum by falsely telling the police that Plaintiff Larkin's dog was an emotional support dog, not a service dog.

143. Defendant Cunningham unlawfully denied Plaintiff Larkin the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations provided by Defendant Petroleum by falsely telling the police that Plaintiff Larkin was acting aggressive and violent.

144. Defendant Wakeman unlawfully denied Plaintiff Larkin the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations provided by Defendant Petroleum by asking Plaintiff Larkin to "provide paperwork proving [Larkin's] dog is a service dog."

145. Defendant Wakeman unlawfully denied Plaintiff Larkin the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations provided by Defendant Petroleum by rolling his eyes and disgustedly sighing at Plaintiff Larkin.

146. Defendant Wakeman unlawfully denied Plaintiff Larkin the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations provided by Defendant Petroleum by telling Defendant Cunningham to call the police on Plaintiff Larkin.

147. Defendant Dickson unlawfully denied Plaintiff Larkin the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations provided by Defendant Petroleum by staring Plaintiff Larkin down in an antagonizing fashion.

148. Defendant Dickson unlawfully denied Plaintiff Larkin the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations provided by Defendant Petroleum by taunting Plaintiff Larkin and telling her, "you are out of order,"

"you are behaving inappropriately," "you should be ashamed of yourself," and " you have real problems and should leave."

149. Defendant Haldorson unlawfully denied Plaintiff Larkin the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations provided by Defendant Petroleum by ignoring the actions of his employees on that day, by permitting his employees to deny Plaintiff Larkin the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations provided by Defendant Petroleum, and finally refusing to investigate the actions of his employees on that day and disciplining his employees.

150. Each Defendant discriminated against Plaintiff Larkin on the basis of disability by failing to follow State laws protecting persons with disabilities and allowing them to have equal access to a place of public accommodation.

151. The acts or omissions of Defendants were moving forces behind Plaintiff Larkin's injuries.

152. The acts or omissions of Defendants as described herein intentionally deprived Plaintiff Larkin of her rights pursuant to the State laws described herein and caused her other damages.

153. Based on the aforementioned description of conduct, it is Defendants' custom, policy, decision, widespread habit, usage, or practice to deny disabled persons with service dogs customer service.

154. Plaintiff Larkin and other individuals with disabilities who use service animals will continue to use Defendants' services and experience the same discriminatory conduct by Defendants and continue to suffer damages as a result.

155.   Plaintiff Larkin requests injunctive relief sought to prevent future harm to herself and others similarly situated from the discriminatory conduct of Defendants.

156.   Defendants acted intentionally and with a deliberate indifference to Plaintiff Larkin's federal and state rights.

157.   Defendants to this claim at all times relevant hereto were acting pursuant to their custom, policy, decision, widespread habit, usage, or practice in their actions pertaining to Plaintiff Larkin.

158.   Plaintiff Larkin will be irreparably harmed if the injunction and the judgment sought herein are not entered for Plaintiff Larkin and against Defendants.

159.   As a proximate result of Defendants' unlawful conduct, Plaintiff Larkin suffered actual mental and emotional injuries, and other damages and losses as described herein entitling her to compensatory damages, in amounts to be determined at trial.

160.   CADA permits successful plaintiffs to recover attorney fees and costs. Colo. Rev. Stat. §§ 24-34-802(3), 804(b).

**VII. THIRD CLAIM FOR RELIEF**
**Outrageous Conduct (Intentional Infliction of Emotional Distress**
(Against All Defendants)

161.   Defendants Petroleum, Cunningham, Wakeman, and Dickson engaged in outrageous conduct resulting in intentional infliction of emotional distress to Plaintiff Larkin by denying her service at Defendant A-B Petroleum.

162.   Defendants Petroleum, Cunningham, Wakeman, and Dickson engaged in outrageous conduct resulting in intentional infliction of emotional distress to Plaintiff Larkin when they illegally demanded "paperwork" to verify that Echo was a service dog.

163.   Defendants Petroleum, Cunningham, Wakeman, and Dickson engaged in outrageous conduct resulting in intentional infliction of emotional distress to Plaintiff Larkin when they taunted her that her dog was only an "emotional support animal," thus denying the reality of her "invisible disabilities" that are protected under Federal and State laws, and claimed that her dog was "barking" because she was "yelling and screaming" and not because Echo was responding to a symptom of Plaintiff's disabilities.

164.   Defendants Cunningham engaged in outrageous conduct resulting in intentional infliction of emotional distress to Plaintiff Larkin by shouting at Plaintiff to "leave the store immediately" at least five (5) times, even after being advised of her rights under the ADA by Plaintiff Larkin.

165.   Defendant Cunningham engaged in outrageous conduct resulting in intentional infliction of emotional distress to Plaintiff Larkin by shouting at Plaintiff Larkin to "provide paperwork proving [Plaintiff Larkin's] dog is a service dog," even after being advised providing paperwork is not a legal requirement by Plaintiff Larkin.

166.   Defendant Cunningham engaged in outrageous conduct resulting in intentional infliction of emotional distress to Plaintiff Larkin by quickly and aggressively approaching Plaintiff Larkin with an intent to scare Plaintiff Larkin and thus effectively triggering Plaintiff Larkin into a panic attack, a symptom of her disabilities.

167.   Defendant Cunningham engaged in outrageous conduct resulting in intentional infliction of emotional distress to Plaintiff Larkin by Defendant Petroleum by calling the police on Plaintiff Larkin for "trespassing."

168.    Defendant Cunningham engaged in outrageous conduct resulting in intentional infliction of emotional distress to Plaintiff Larkin by falsely telling the police that Plaintiff Larkin's dog was an emotional support dog, not a service dog.

169.    Defendant Cunningham engaged in outrageous conduct resulting in intentional infliction of emotional distress to Plaintiff Larkin by falsely telling the police that Plaintiff Larkin was acting aggressive and violent.

170.    Defendant Wakeman engaged in outrageous conduct resulting in intentional infliction of emotional distress to Plaintiff Larkin  by asking Plaintiff Larkin to "provide paperwork proving [Larkin's] dog is a service dog."

171.    Defendant Wakeman engaged in outrageous conduct resulting in intentional infliction of emotional distress to Plaintiff Larkin by rolling his eyes and disgustedly sighing at Plaintiff Larkin.

172.    Defendant Wakeman engaged in outrageous conduct resulting in intentional infliction of emotional distress to Plaintiff Larkin  by telling Defendant Cunningham to call the police on Plaintiff Larkin.

173.    Defendant Dickson engaged in outrageous conduct resulting in intentional infliction of emotional distress to Plaintiff Larkin by staring Plaintiff Larkin down in an antagonizing fashion.

174.    Defendant Dickson engaged in outrageous conduct resulting in intentional infliction of emotional distress to Plaintiff Larkin by taunting Plaintiff Larkin and telling her, "you are out of order," "you are behaving inappropriately," "you should be ashamed of yourself," and " you have real problems and should leave."

175.    Defendant Haldorson engaged in outrageous conduct resulting in intentional infliction of emotional distress to Plaintiff Larkin by ignoring the actions of his employees on that day, by permitting his employees to deny Plaintiff Larkin the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations provided by Defendant Petroleum, and refusing to investigate the actions of his employees on that day and disciplining his employees.

176.    Each Defendant engaged in outrageous conduct resulting in emotional distress to Plaintiff Larkin by behaving in an absolutely outrageous, exterme, insulting, degrading and threatening manner as described, above.

177.    Defendants' behaviors, individually and collectively, as described above, were so inappropriate as to be outside the bounds of common human decency and what is tolerated by society.

178.    The acts or omissions of Defendants were moving forces behind Plaintiff Larkin's injuries.

179.    Defendants acted intentionally and with a deliberate indifference to Plaintiff Larkin's rights and basic levels of common human decency.

180.    The acts or omissions of Defendants were moving forces behind Plaintiff Larkin's injuries.

181.    Plaintiff Larkin will be irreparably harmed if the judgment sought herein is not entered for Plaintiff Larkin and against Defendants.

182.    As a proximate result of Defendants' unlawful conduct, Plaintiff Larkin suffered actual mental and emotional injuries, and other damages and losses as described herein entitling her to compensatory damages, in amounts to be determined at trial.

**REQUEST FOR RELIEF**

WHEREFORE, for all the foregoing reasons, Plaintiff respectfully request this Court to enter

Judgment in favor of Plaintiff and against each of the Defendants and grant:

1. Injunctive relief in the form of a Court order requiring Defendants to comply with the applicable rules and regulations under these statutes;

2. Compensatory, exemplary, and consequential damages, including damages for emotional distress, mental anguish, and humiliation on all claims allowed by law in an amount to be determined at Trial;

3. Economic losses on all claims allowed by law;

4. Special damages in an amount to be determined at Trial;

5. Punitive damages on all claims allowed by law in an amount to be determined at Trial;

6. Attorneys' fees and the costs associated with this action under 28 C.F.R. § 35.175; 42 U.S.C. § 12133; 29 U.S.C. § 794a; and Colo. Rev. Stat. §§ 24-34-802(3), 804(3)(b), on all claims allowed by law;

7. Pre- and post-judgment interest at the lawful rate; and

8. Any further relief that this court deems just and proper, and any other appropriate relief at law and equity.

**PLAINTIFF REQUESTS A TRIAL BY JURY.**

Respectfully submitted this 28th day of November 2020.

*s/Kristina M. Bergsten*_____
Kristina M. Bergsten, ID # 50663
BERGSTEN LAW OFFICES
PO BOX 460245
Denver, CO 80246

Telephone: 303-623-4000
Email: kb@bergstenlaw.com
*Attorney for Plaintiff,*
*Jennifer Larkin*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of November, 2020, I filed the foregoing pleading via the ECF system and served Defense Counsel via the ECF system.

_s/Kristina Bergsten_____
Kristina M. Bergsten, ID # 50663
BERGSTEN LAW OFFICES
PO BOX 460245
Denver, CO 80246
Telephone: 303-623-4000
Email: kb@bergstenlaw.com
*Attorney for Plaintiff,*
*Jennifer Larkin*